*J. J. Northcutt,* for defendant.

---

GILLESPIE *et al. v.* POWELL.

Under the pleadings and the evidence, the court erred in directing a verdict for the defendant.

Submitted February 3,—Decided March 11, 1909.

Complaint for land. Before Judge Fite. Gordon superior court. February 24, 1908.

*O. N. Starr* and *R. J. & J. McCamy,* for plaintiffs.

HOLDEN, J. The plaintiffs filed a statutory complaint to recover from the defendant a tract of land described in the petition as follows: "Two acres more or less of Lot Number 263 in the 7th District and 3d Section, and described as follows: Located

23

near the South east corner of the South half of said lot and bounded on the North, East and West by Pine Log Creek, and on the South by lands of Henry Langston, and lying in the bend or fork of said Pine Log Creek and the same lands deeded to J. H. Powell by Z. T. Terrell." The defendant filed an answer, denying that plaintiffs had any title to the land, and setting up a prescriptive title of twenty years adverse possession, and seven years adverse possession under color of title. Plaintiffs and defendant claim under a common grantor, Lewis. Upon the conclusion of the evidence, the court directed a verdict for the defendant, and the plaintiffs excepted.

Upon the trial the plaintiff introduced in evidence a deed from Lewis to a mortgage company, to secure a debt, dated February 1, 1889, conveying all of lot number 263 except two acres on the west side of Pine Log creek, containing 158 acres, more or less. Other deeds were introduced to show that the property conveyed in this deed was sold under judicial process, and the title finally passed into the plaintiffs under a deed describing the property as it was described in the deed from Lewis to the mortgage company. It appears from the testimony that Lewis conveyed two acres of this land lot, located on the creek, to Butler. This deed does not appear in the record, and the date of its execution nowhere appears. Plaintiffs claim that the two acres excepted in the deeds above named refer to the land conveyed by Lewis to Butler. The defendant contends that the two acres excepted in the deeds above named refer to the land sued for, and lie across the creek from the balance of the lot. The Butler land, as shown by the testimony, lies on the creek, but is not separated from the balance of the tract by the creek. The testimony of one of the plaintiffs was that the land in dispute was surrounded by the creek and that it lay on the south side of the creek, and that "The piece that Powell bought from Claiborne Butler is in the southeast corner of the lot. The way the creek runs, the creek kinder runs around it; and that's why I say that it lies west of Pine Log creek." Lewis testified, that the land in dispute lay south or west of the creek; that the Butler land does not lie west of the creek, but lies northeast of the creek; that the land in dispute was in the horseshoe bend of the creek. There was other testimony as to the location of these two tracts, but no plat or survey of the land was introduced in evi-

dence. One of the plaintiffs testified that when he obtained an op-
tion on the land before he bought it, Lewis told him the two acres
excepted in the deed was the land he sold to Butler, and that it was
not the land in dispute. One of the plaintiffs also testified: "He
said that he bought it from Joe Ab Lewis, and that it was my
land. He said, 'It's your land, and I consider I can't hold the
land.' He went on to say he was satisfied that he bought it, that
it was the land company's land, and that they kept after him six
or eight weeks, and that he thought possibly—said he was getting
it cheap, for twenty dollars, and if he got it a year or two it would
pay. Mr. Powell said that. I went and had the land surveyed
with the surveyor and the land processioners, and they give that to
me, laid it out and marked it out to me." The testimony shows
that the land sued for was in the bend of the creek and across the
creek from the rest of the land lot, and one of the plaintiffs testi-
fied that this land in dispute was on the south side of the creek.
The land sued for was a part of land lot 263, and the deed under
which the plaintiffs claimed conveyed all of this lot except two
acres on the west side of the creek.

In view of all the evidence in the case, we think it was a ques-
tion for the jury to decide whether or not the land excepted in
the deeds under which the plaintiffs claim title referred to the
land in dispute. If the two acres excepted in the plaintiffs' deeds
referred to the land in dispute, across the creek, the plaintiffs could
not recover. If this exception does not apply to this land sued for,
the plaintiffs would be entitled to recover, unless some good de-
fense is shown.

The defendant contended that he had a good title by prescrip-
tion by reason of seven years posession under color of title. The
deed made by Terrell to Powell was executed in 1903, less than
seven years before the filing of this suit; hence Powell could not
claim a prescriptive title by reason of his own possession for seven
years under color of title. It appears from the testimony that
Terrell, under whom Powell claims, obtained a deed from Lewis
in 1886, and that this deed was lost and a copy thereof at some
time established. It does not appear that this deed was ever
recorded. The deed of the plaintiffs' predecessor in title was
made and recorded before Terrell made a deed to the defendant.
Lewis testified: "I reckon this paper that I delivered to Terrell

was to better secure a debt, it was already secured, it was my own proposition to secure the debt. I owed $630.00 here on an old judgment that was against the property that I had already mortgaged, and I deeded some property to get up that money, and he got the money for me and in a short while he made me a trade on some land and got Mr. Terrell to advance the loan that he had got for me, and Mr. Terrell come to my house, and I told him to better secure him I would make this deed to a little parcel of land to better secure him." If the deed from Lewis to Terrell was not recorded, and Terrell was not in possession of the disputed land, when Lewis made the deed to the mortgage company and the latter took and recorded its deed, without being charged with notice of the deed from Lewis to Terrell, this deed to Terrell would not be valid as against the mortgage company, or those claiming under them. It further appears from the testimony that Lewis made the deal in selling the land to Powell, and the testimony indicates that Terrell never got any of the purchase-money paid by Powell. It does not appear that any one was a party to the suit to establish a copy of the lost deed from Lewis to Terrell, except the parties to the deed. Lewis further testified: "Terrell never rented this land, I rented it all the time, I don't think he ever got any of the rents." It appears uncertain from the testimony that Terrell was ever in possession of the land by himself or through any one else; and under the evidence in the record before us the court could not say, as a matter of law, that there was any possession under color of title by Terrell, under whom Powell held, which could be tacked to the possession of Powell so as to make out seven years adverse possession under color of title. Under the record the defendant could not contend that he has a prescriptive title by possession for twenty years by himself and those under whom he holds, even if Terrell went into possession of the land when the alleged deed from Lewis to him was made, because this deed, according to the testimony, was made in April 1886, and this suit was filed less than twenty years thereafter, to the February term, 1906. There is no contention that any one was in possession of this land adversely to Lewis, the common grantor, prior to the making of the alleged deed in April, 1886. We think the court committed error in directing a verdict in favor of the defendant; and the judgment is        *Reversed. All the Justices concur.*